UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR CORTEZ GREER, JR.,

        Petitioner,

                             CASE NO. 5:11-CV-12745
v.                         JUDGE JOHN CORBETT O'MEARA
                             MAGISTRATE JUDGE PAUL J. KOMIVES

DEBRA SCUTT,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    D.    *Ineffective Assistance of Counsel (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            a. Failure to Investigate Witnesses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            b. Requesting Felonious Assault Instruction . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        3.    *Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    E.    *Weight and Sufficiency of the Evidence (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . . . . 23
        1.    *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        2.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    F.    *Perjured Testimony (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
    G.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . 33
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
    H.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     REPORT:

A.      *Procedural History*

1.      Petitioner Arthur Cortez Greer, Jr., is a state prisoner, currently confined at the Parnall Correctional Facility in Jackson, Michigan.

2.      On June 30, 2008, petitioner was convicted of assault with a dangerous weapon (felonious assault), MICH. COMP. LAWS § 750.82; carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.227; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and two counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Muskegon County Circuit Court. On July 1, 2008, he was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to concurrent terms of 5½-15 years' imprisonment on the felonious assault conviction, and 5½-30 years' imprisonment on each felon in possession conviction, all consecutive to two concurrent mandatory terms of two years' imprisonment on the felony-firearm convictions.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      WHETHER THERE WAS A DENIAL OF DUE PROCESS BECAUSE THE EVIDENCE WAS CONSTITUTIONALLY INSUFFICIENT TO CONVICT, THERE BEING NO PROOF BEYOND A REASONABLE DOUBT ON ANY OF THE CHARGES?

II.     WHETHER THE VERDICT SHOULD BE SET ASIDE BECAUSE IT WAS CONTRARY TO THE GREAT WEIGHT OF THE EVIDENCE?

III.    WHETHER THERE WAS A DENIAL OF DUE PROCESS TO THE DEFENDANT BECAUSE THE TRIAL DID NOT COMPORT WITH

FUNDAMENTAL FAIRNESS BECAUSE OF THE IMPROPER ACTIONS OF THE POLICE AND THE PROSECUTOR?

IV.    WHETHER THE DEFENDANT'S RIGHTS TO CONSTITUTIONAL NOTICE AND DUE PROCESS WERE VIOLATED BECAUSE THE JUDGE INSTRUCTED THE JURY THAT THEY COULD FIND THE DEFENDANT GUILTY OF ASSAULT WITH A DANGEROUS WEAPON AS A LESSER INCLUDED OFFENSE OF ASSAULT WITH INTENT TO MURDER, AND WHETHER THE FAILURE OF THE DEFENDANT TO OBJECT TO THE ERRONEOUS INSTRUCTION WAS PLAIN ERROR, EXCUSED BY PLAIN ERROR DOCTRINE, OR A VIOLATION OF HIS 6TH AMENDMENT RIGHT TO EFFECTIVE TRIAL COUNSEL?

V.    WHETHER THE TRIAL COURT ERRED IN REFUSING TO GIVE CJI2d 5.12, THE INSTRUCTION ON THE MISSING WITNESS EZELL?

VI.    WHETHER THE FELONY FIREARM CONVICTION BASED UPON THE CHARGES OF ASSAULT WITH INTENT TO MURDER AND ASSAULT WITH INTENT TO DO GREAT BODILY HARM MUST BE SET ASIDE BECAUSE THE JURY FOUND THE DEFENDANT NOT GUILTY OF THE CHARGES UPON WHICH THIS CHARGE WAS PREDICATED.

VII.    WHETHER THE TRIAL [COURT] DENIED THE DEFENDANT DUE PROCESS, EQUAL PROTECTION, AND VIOLATED DOUBLE JEOPARDY IN NOT GIVING THE DEFENDANT CREDIT FOR 280 DAYS JAIL TIME?

The court of appeals found no merit to petitioner's claims, and affirmed his convictions and sentences. *See People v. Greer*, No. 286912, 2010 WL 2332417 (Mich. Ct. App. June 10, 2010) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. In addition, petitioner raised 12 new claims: (1) denial of right to present a defense; (2)-(4) prosecutorial misconduct claims of improper bolstering, vindictiveness, and denial of speed trial; (5)-(6) ineffective assistance of counsel for failure to request a drug addict instruction and failure to investigate and produce as witnesses the officers who searched petitioner's home; (7) witness intimidation; (8)-(9) ineffective assistance of counsel for failure to object to violation of

3

sequestration order and appellate counsel's failure to raise claims on appeal; (10) remand for evidentiary hearing; (11) abuse of discretion by the trial judge in failing to grant directed verdict; and (12) invalid sentence. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Greer*, 488 Mich. 1039, 794 N.W.2d 40 (2011).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on June 24, 2011. As grounds for the writ of habeas corpus, he raises four claims:

I.      PETITIONER ARTHUR GREER JR. IS ENTITLED TO A FULL AND FAIR EVIDENTIARY HEARING IN THIS COURT, DUE TO THE DENIAL OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO INVESTIGATE OR INTERVIEW TWO WITNESSES WHO WOULD HAVE PROVIDED EVIDENCE OF PETITIONER'S INNOCENCE, ALSO WHERE COUNSEL REQUESTED AN UNCHARGED LESSER COGNATE OFFENSE THAT RESULTED IN PETITIONER'S CONVICTION OF FELONIOUS ASSAULT.

II.     PETITIONER ARTHUR GREER JR., WAS DENIED HIS 14TH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL, BECAUSE THE EVIDENCE WAS CONSTITUTIONALLY INSUFFICIENT TO CONVICT PETITIONER GREER BECAUSE NO PROOF BEYOND A REASONABLE DOUBT WERE PROVEN OF ANY OF THE CHARGES BROUGHT BY THE PROSECUTOR.

III.    PETITIONER ARTHUR GREER JR. WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL TRIAL UNDER THE FOURTEENTH AMENDMENT OF THE UNITES STATES CONSTITUTION, BECAUSE THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE VIOLATIVE OF *TIBBS V. FLORIDA*, 457 U.S. 31; 102 S.CT. 2211; 72 L.ED2d 562 (1982).

IV.     PETITIONER ARTHUR GREER JR., WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION WHEN HIS CONVICTION WAS OBTAINED THROUGH THE KNOWING USE OF PERJURED TESTIMONY, AND FALSE EVIDENCE BY THE PROSECUTION IN VIOLATION OF *NAPUE V. ILLINOIS*, 360 U.S 264; 79 S.CT. 1173, 3 L.ED2d 1217 (1959); *GIGLIO V. UNITED STATES*, 405 U.S. 150; 92 S.CT. 763; 31 L.ED2d 104 (1972).

6.      Respondent filed her answer on January 4, 2012.  She contends that the portion of petitioner's claim alleging ineffective assistance of counsel based on counsel's failure to investigate witnesses is unexhausted, and that the remainder of petitioner's claims are without merit.

7.      Petitioner filed a reply to respondent's answer on January 20, 2012.

B.    *Factual Background Underlying Petitioner's Conviction*

As briefly summarized by the Michigan Court of Appeals,

[d]efendant's convictions arise from the shooting assault of Jomarco Mattox, who was shot once in the shoulder.  Mattox admitted that he robbed defendant during the early morning hours on the day of the shooting.  According to Mattox, defendant confronted him on the street later that morning and produced a gun.  Mattox ran, but was shot in the shoulder.  In addition to the weapons offenses, defendant was charged with alternative counts of assault with intent to commit murder, MCL 750.83, and assault with intent to do great bodily harm less than murder, MCL 750.84.  At defense counsel's request, the trial court instructed the jury on the lesser offense of felonious assault.  The jury acquitted defendant of the greater assault charges, but found him guilty of felonious assault and the weapons offenses.

*Greer*, 2010 WL 2332417, at *1.  The evidence adduced at trial was more fully summarized in the prosecutor's brief in the Michigan Court of Appeals:

On September 17, 2007, Jomarco Maddox and his cousin, Marlin Ezelle (a/k/a "Lolly") were on the street looking for someone to rob.  Maddox decided to rob Defendant.  Defendant was driving his own vehicle (a Toyota pickup truck) when he was robbed.  "Lolly" had called Defendant for a ride.  This is why Defendant drove to this area on September 17, 2007, at around 4 a.m.  When Defendant got to this location, he saw two guys walking up to him, one being "Lolly."  Lolly walked to the driver's side door and briefly talked to Defendant.  Suddenly, Defendant's passenger side door opened and Maddox jumped in holding a gun on Defendant.  He knew Jomarco Maddox as "Marco."  Defendant gave Maddox his money and wallet.  Maddox also demanded Defendant's phone, which Defendant turned over.  The two then wrestled over Maddox's gun.  The two fell out of the passenger side of Defendant's vehicle continuing to fight over the gun.  Lolly joined in and eventually got the gun.  Lolly told Defendant to get back into his truck and take off.

At around 5 a.m., Defendant went to his brother Adrian's house.  He told Adrian that he had just been robbed at gunpoint.  Defendant stayed at his brother's house for a little bit and then left.

5

Because the victims would have recognized Defendant's truck, Defendant decided to return to this location in his girlfriend's vehicle (a black Chevrolet Lumina) to look for his assailants, and, when he found them, he shot at them, wounding Jamarco Maddox in the left shoulder. Defendant's girlfriend's house is only 1.4 miles from the area of the shooting and it takes about 3 minutes and 29 seconds to drive there.

Immediately before this shooting, Jomarco Maddox and his cousin were walking in the area of Williams and Amity whereupon Maddox noticed a dark Chevrolet Lumina or Monte Carlo parked down the street that he had not seen before. It was dark. He then noticed someone walking towards them wearing a hoodie. He first thought it was someone he knew by the name of Sticks. When this person approached Maddox, there was a street light over them. As the person got closer, he removed his hoodie so that Maddox could now see it was not Sticks. It was Defendant, Arthur Greer. Maddox was positive of this and had no doubts whatsoever about it because he saw his face–"[f]ace to face." At first, Maddox noticed Defendant about a half block down the street. At this point, Maddox was in the middle of the street and Defendant was on the sidewalk.

It was about 6:30 a.m. "As soon as [Maddox] seen his face [he] tap [his] cousin, like, run. As soon as [Maddox] seen his face [Defendant] reached in his pants. [Maddox] already knew [Defendant] was gonna shoot at [him]." As soon as Defendant pulled the gun from his waistband, Maddox turned and began to run. Defendant fired a shot or two at Maddox's cousin and then started shooting at Maddox. Virginia Cranston called the police on her cellular phone because she heard gunshots coming from the area of Amity and Williams. Maddox was shot in his left shoulder, but this was after Defendant had fired a few shots. Defendant was only about 10 to 12 feet from Maddox at the time he was shooting at him.

Char'zell Shelby testified that he saw Defendant, known to him as J.R., "pop[] up from around and said I got you." When asked what happened after J.R. said I got you, Shelby said "I just heard a shot." He heard "like four, three or four" shots "from a distance 'cause I took off."

Defense counsel asked Shelby "where was Jomarco standing when he got shot in front of you if you saw it?" Shelby said, "up against the other side of the street." Shelby heard a shot (not necessarily the one that hit Jomarco) when Jomarco "was crossin' the street" on the terrace. He put Defendant across the street also. He initially saw Defendant from "the tan house across the street from the side of it." He was explaining that Defendant was moving. In other words, he clearly was not standing still. As confirmed by Maddox, Defendant was chasing Maddox, who was trying himself to be a moving target. In other words, Shelby was noting when Defendant was initially seen and not when he was actually shooting. This is true because he was "hooded up," which was before he had taken his hood down (as Maddox had described) and started shooting at Maddox. Defendant and Maddox "[p]retty much [came] right up on each other," which is consistent with Maddox's testimony and it was at that point that the shooting started. At that first shot, Shelby took off as did Maddox and the other man.

6

Maddox decided against going to the hospital because he did not want to end up having to go to court over this. Instead, after escaping from Defendant, Maddox hitched a ride to his girlfriend's (Brittany LaBelle's) house at 628 Amity. Maddox's cousin was already there and had told her what happened and she feared that Maddox was dead. Rather than call the police, Maddox's girlfriend called Maddox's mother who then called the police.

When the police arrived, Maddox initially just confirmed that he had been shot. He did not disclose who the shooter was.

Maddox was taken by ambulance to the hospital. There he told the doctor that he had been shot. Two detectives came to the hospital to talk to Maddox. Initially, he denied knowing who shot him. Later, however, he admitted knowing who shot him, but he refused to give up the name of the shooter because that is not something "we . . . do"; "we deal with it ourselves."

The next day, however, after having time to think about it, Maddox changed his mind and told the police who shot him–Arthur Greer, the Defendant. Detective Bleich was called in to take Maddox's statement. Maddox admitted that he robbed Defendant, stole drugs from Defendant, used some of the drugs and was in the process of trying to sell some of the drugs when he got shot. Maddox also acknowledged that he could be prosecuted for robbing Defendant and that no promises had been given to him regarding that possibility. He also understood that he put his cousin Marlin at risk of prosecution.

On the morning of the shooting, when Defendant's girlfriend, Alicia Brooks, woke up, she noticed that her black Lumina was missing. She went into the kitchen and saw Defendant coming into the house with her keys. It was then about 6:45 a.m.

Later Defendant and his girlfriend were in bed together. She asked Defendant what was going on. Defendant responded, "what would you do if I go back to prison for killin' somebody." He also told her that "it might be so."

Defendant was arrested the day after Maddox positively identified him from a photographic lineup as being the shooter. Thereafter, from the jail, Defendant attempted to hide the weapon he used in the assault. He called his girlfriend, Alicia Brooks, and told her to go into the basement to retrieve items from under the dryer and in the ceiling. These items included a .357 handgun and bullets for the handgun. Defendant's brother, Adrian Greer, arrived at the girlfriend's house early in the morning to retrieve these items to get rid of them. When officers arrived to conduct a search warrant of the brother's mother's house, the brother asked for time to retrieve the items. He returned about an hour later with the .357 handgun and bullets. Defendant's girlfriend also confirmed that those were the items she retrieved form her basement at Defendant's direction.

Muskegon Police Detective Clay Orrison conducted a search of the area of the shooting. He "found a partial jacketed round on the sidewalk, ah, on Williams Street south of Amity and also found a bullet hole in the south, in the northwest corner of 920 Williams, which later, removing the siding [he] was able to recover a bullet form there." He also observed and photographed "a furrow line where the soil itself was actually like a turf motion from where the bullet slid along the surface of

7

the grass and the sod and eventually would disappear . . . ."  The firearm was fired in a downward angle in an easterly direction to produce this furrow in this way.  The bullet found inside the siding of the house at 920 Williams would not have been the same bullet that made the furrow.  The shooter "was either in the street, possibly even across the street and he was firing to an east to south, east, southeast direction."

The .357-caliber handgun seized from Defendant's brother that was found by Defendant's girlfriend under the dryer in the basement was fully operational.  A comparison made between the bullet fragment recovered by Detective Orrison and a bullet fired a the State Police Crime Laboratory from the .357-caliber handgun established that "the metal jacket had the same classification as the firearm.  What that means is that the number of land and groove impressions on the surface of the bullet, which was five right, is the same as what's in the firearm.  So the firearm has five land and grooves with a right hand twist."  "Also, in measuring the widths of those land and grooves on the bullets they were the same as the land and grooves in the firearm."  These "class characteristics" allowed the ballistics expert to say that this bullet fragment could have been fired from the .357-caliber handgun seized from Defendant's brother.  However, the fragment lacked sufficient individual characteristics or scratch marks to say that it was actually fired from that gun.  Neither could the expert make an exact determination of what caliber the bullet fragment was beyond saying that "it's a 38 class," which would "include 38 caliber, 357 caliber, 9mm, it's within that class range."  The firearm he inspected is a .357 magnum [which] one could "shoot 357 or 38 special in this firearm."

The firearms expert also examined the six bullets that were removed from the .357-caliber handgun seized from Defendant's brother.  They were also brass-jacketed bullets, which are consistent with the bullet fragments found by Detective Orrison.

A semi-automatic handgun will leave shell casings at the scene of a shooting whereas a revolver, like Defendant's .357, would not leave shell casings and no shell casings were found at the scene.  Thus, the weapon used during the shooting was "most likely, a revolver."

Defendant had a prior felony conviction of delivery of a controlled substance supporting Defendant's felon-in-possession conviction.

Pl.-Appellee's Br. on Appeal, in *People v. Greer*, No. 286912 (Mich. Ct. App.), at 1-8 (citations to trial transcript and footnotes omitted).

In addition to this testimony, petitioner presented a number of witnesses to testify in support of his alibi defense, and he himself testified.  Petitioner also presented testimony impeaching the general credibility of Maddox, and suggesting that other persons could have done the shooting.

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*,

539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.

9

However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last

10

state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Ineffective Assistance of Counsel (Claim I)*

Petitioner first contends that his trial counsel was constitutionally ineffective for failing to investigate witnesses and for requesting an instruction on the lesser cognate offense of felonious assault. Petitioner also contends that he is entitled to an evidentiary hearing in this Court on his ineffective assistance of counsel claim. I first address whether petitioner is entitled to habeas relief on the record as it currently stands, and then address whether petitioner is entitled to an evidentiary hearing. The Court should conclude that petitioner is entitled to neither an evidentiary hearing nor relief on the merits of his claims.

11

1.    *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

12

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland* to claims adjudicated on the merits by the state courts:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

    2.    *Analysis*

            a.  *Failure to Investigate Witnesses*

Petitioner contends that counsel was ineffective for failing to investigate and present at trial

13

two witnesses: Marlon Ezell and Theresa Jordan.  In support of this claim, petitioner presents their affidavits.[1]  In his affidavit, Ezell declares that he was with Maddox at the time of the shooting, and that petitioner was not the shooter.  Ezell further declares that he was presented with two photographic lineups in which petitioner's picture appeared, but he told the police that the shooter's picture was not present.  He declares that he attended the preliminary examination to testify about what he witnessed, but a detective threatened him with charges if he testified.  Jordan avers that she attended petitioner's trial and, on the day he was found guilty, she ran into Ezell.  Ezell told her that petitioner was not the shooter and that "he would of [sic] testified to what he knew and say, but he was wanted by the police."  Petitioner also presents his own affidavit, in which he avers that on both March 17 and May 27, 2008 (prior to and during petitioner's trial), he "informed trial counsel . . . that [he] wanted both Marlon Ezell and Theresa Jordan as witnesses."

Leaving aside the fact that new statements from witnesses years after the crime are inherently suspect, *see Schlup*, *Schlup v. Delo*, 513 U.S. 298, 314-16 (1996), and such statements are to be viewed with "a degree of skepticism."  *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring), these affidavits do not provide any basis for concluding that counsel was ineffective.  First, with respect to Jordan, petitioner's averment in his own affidavit that he informed counsel he wanted Jordan to testify is not credible.  By her own affidavit, Jordan states that she spoke to Ezell about petitioner's role in the crime (or lack thereof) *after* the jury had found petitioner guilty.  Prior to and during trial, Jordan had (at least as far as her affidavit shows) no knowledge about the events at issue.  Because of this, counsel could not have been ineffective in failing to interview Jordan or

---

[1]The affidavits are attached as exhibits to petitioner's *pro se* motion to remand filed in the Michigan Court of Appeals, which is itself attached as Appendix 5 to his petition.

present her as a witness.  Further, Jordan does not aver that she has any personal knowledge of the events at issue; rather, she attests only to hearsay statements related to her by Ezell.  Such hearsay, however, would not have been admissible at trial.  Because Jordan does not aver that she could have provided any testimony that would have been admissible, petitioner cannot show that counsel's performance was deficient or that he was prejudiced by counsel's performance.

Turning to Ezell, his averments, if true, would have provided a defense to the charges. However, petitioner cannot show that counsel's performance was deficient or that he was prejudiced by counsel's failure to call Ezell because it is clear that Ezell was taking great efforts to avoid testifying at trial.  Ezell was an endorsed witness, but was not produced at trial.  Based on this, petitioner argued at trial and on appeal that the trial court should have given an instruction that it could draw an adverse inference from the prosecutor's failure to present Ezell.  The trial court rejected this claim, concluding after a hearing on the matter that the police had exercised due diligence in attempting to locate Ezell.  On appeal, the Michigan Court of Appeals found that the trial court had not abused its discretion, noting that the police had attempted to locate Ezell at his last known address and at other addresses associated with Ezell, had determined that he was not hospitalized or incarcerated, and had checked databases to determine if there were other addresses associated with Ezell.  *See Greer*, 2010 WL 2332417, at *2.  As the court of appeals observed, "[t]he record indicates that Ezell had other pending criminal matters and was apparently evading service." *Id*.  And Jordan's affidavit, in which she states that Ezell told her "he would of [sic] testified to what he knew and saw, but he was wanted by the police," confirms that Ezell was actively evading service.  Thus, petitioner cannot establish "deficient performance in light of the fact that [Ezell] was evading service." *Rodriguez v. Adams*, 792 F. Supp. 2d 1062, 1088 (N.D. Cal. 2011), *superceded*

*in part on other grounds*, 2012 WL 610482 (N.D. Cal. Feb. 24, 2012); *see also, Sierra v. Bartowski*, No. 11-1860, 2012 WL 4504246, at *25 n.20 (D.N.J. Sept. 27, 2012) ("Petitioner's assertion that his counsel was ineffective for failing to locate someone who could not be located appears facially frivolous."); *Burke v. Smith*, No. 07-cv-3098, 2012 WL 2394718, at * 8 (E.D.N.Y. June 21, 2012); *cf. Armstead v. Maggio*, 720 F.2d 894, 896 (5th Cir. 1983) (counsel not ineffective for failing to request continuance to obtain witness's presence at trial where there was no indication the witness could be located).

In light of Ezell's actions at the time, his current averment that he was ready and willing to testify on petitioner's behalf is not credible. Further, in light of the efforts made by the police to secure Ezell's presence at trial, petitioner does not explain what more counsel could have done to assure that Ezell appeared at trial and testified on his behalf. Thus, petitioner cannot show that counsel's performance with respect to Ezell was deficient. Nor, in light of Ezell's successful efforts to evade service, can he show a reasonable probability that Ezell would in fact have been located and produced at trial had counsel taken additional steps to attempt to locate him. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[2]

---

[2]Respondent contends, correctly, that this claim is unexhausted. The federal habeas statute provides, in relevant part, that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Thus, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). To satisfy the exhaustion requirement, a petitioner "must have 'fairly presented the substance of each of his federal constitutional claims to the state courts.'" *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995)). Further, the petitioner must fairly present the claim at each level of state court review. *See O'Sullivan*, 526 U.S. at 845-47. Here, petitioner first raised his claim that counsel was ineffective for failing to call Ezell and Jordan as witnesses in his motion for reconsideration following the court of appeals's affirmance of his convictions. As the Supreme Court has explained, a claim is not fairly presented to the state court's when it is raised in a procedural context in which its consideration is unlikely. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989). Because the Michigan Court of Appeals

*b. Requesting Felonious Assault Instruction*

Petitioner next contends that counsel was ineffective for requesting an instruction on felonious assault, because such an instruction was impermissible as a matter of state law.  In *People v. Cornell*, 466 Mich. 335, 646 N.W.2d 127 (2002), upon which petitioner relies, the Michigan Supreme Court held that the statute governing lesser offenses, MICH. COMP. LAWS § 768.32(1), does not permit a court to instruct the jury on an uncharged cognate offense.  *See Cornell*, 466 Mich. at 359, 646 N.W.2d at 140.  Because felonious assault is a cognate offense to the offense of assault with intent to commit either murder or great bodily harm, the instruction was not appropriate under state law.  *See People v. Otterbridge*, 477 Mich. 875, 875, 721 N.W.2d 595, 595 (2006).  The Michigan Court of Appeals rejected petitioner's claim, explaining that although § 768.32(1) prohibited the instruction, "a defense attorney has discretion to waive 'a broad array of constitutional and statutory provisions.'"  *Greer*, 2010 WL 2332417, at *2 (quoting *People v. Carter*, 462 Mich. 206, 217-18, 612 N.W.2d 144 (2000).  Counsel's decision to waive the error (or rather, to affirmatively invite the error) was reasonable, the court concluded, because "[b]y requesting the

_____

generally does not consider new issues raised in a motion for reconsideration, petitioner's raising of his new ineffective assistance claim in that context was not sufficient to fairly present the claim to the state courts.  *See Szydlek v. Curtin*, No. 2:12-cv-14670, 2012 WL 6114945, at *2 (E.D. Mich. Dec. 10, 2012) (Zatkoff, J.); *Drain v. Curtin*, ___ F. Supp. 2d ___, ___, 2012 WL 5383048, at *20 (E.D. Mich. Nov. 2, 2012) (Tarnow, J.); *Bridges v. Lafler*, No. 09-11665, 2010 WL 2836908, at *3 (E.D. Mich. July 19, 2010) (Luddington, J.).

Exhaustion is not jurisdictional, and thus despite the exhaustion requirement a habeas petition "may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2) (emphasis added).  A federal court may decide a habeas petition on the merits when the grounds for relief are without merit or are not cognizable on habeas review.  *See Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991); *Prather v. Rees*, 822 F.2d 1418, 1421-1422 (6th Cir. 1987).  As explained above, petitioner's claim that counsel was ineffective for failing to call Ezell and Jordan is without merit, and the Court should therefore deny the claim on that basis rather than requiring further futile review in the state courts.  If, however, the Court disagrees with this conclusion, the Court may not grant relief on the claim, but must first require petitioner to exhaust the claim in state courts.

felonious assault instruction, counsel gave the jury a means by which to find defendant guilty of a less serious offense in the event it found the prosecution witnesses credible." *Id.* This determination was reasonable.

Relying on state law, the court of appeals found that the error in instructing on a cognate offense was subject to deliberate waiver, and this state law rule is consistent with federal law. *See New York v. Hill*, 528 U.S. 110, 114 (2000) (internal quotations and citations omited) ("We have, however, in the context of a broad array of constitutional and statutory provisions, articulated a general rule that presumes the availability of waiver, and we have recognized that the most basic rights of criminal defendants are subject to waiver."). And, as did the court of appeals in petitioner's case, the Michigan Court of Appeals has expressly held that a defendant's request for a cognate offense instruction waives any error in the trial court's giving of the instruction. *See Greer*, 2010 WL 2332417, at *1; *People v. Williams*, No. 281196, 2009 WL 3365759, at *1 (Mich. Ct. App. Oct. 20, 2009) (per curiam); *see also*, *People v. Nyx*, 479 Mich. 112, 128, 734 N.W.2d 548, 558 (2007) (plurality op. of Taylor, C.J.) (noting that where defense counsel requests cognate offense instruction, any claim of error is barred by the invited-error doctrine). Indeed, the construction of the lesser offense statute adopted by the Michigan Supreme Court in *Cornell* was premised in large part on the reasoning that allowing a court to instruct a jury on an uncharged cognate offense deprives a defendant of his due process right to notice of the charges against him. *See Nyx*, 479 Mich. at 123-25, 734 N.W.2d at 555-56 (plurality op.); *id.* at 139-40, 734 N.W.2d at 564-65 (Markman, J., concurring); *id.* at 143, 734 N.W.2d at 566 (Cavanagh, J., joined by Kelly, J., concurring). And a defendant cannot complain that he lacked notice of a charge that he explicitly requested by given to the jury for consideration. *See Orlina v. Superior Ct.*, 73 Cal. App. 4th 258,

18

263-64 (1999); *State v. Hamilton*, 754 P.2d 857, 860 (N.M. Ct. App. 1988); *cf. Wilson v. Lindler*, 995 F.2d 1256, 1264 (Widener, J., dissenting), *adopted as opinion of court on reh'g en banc*, 8 F.3d 173, 175 (4th Cir. 1993) (en banc).

Thus, the question is not whether counsel had a basis for objecting to the instruction; she assuredly did.  The question, rather, is whether her strategy of affirmatively requesting the instruction amounted to deficient performance.  The court of appeals concluded that it did not, and this determination was reasonable.  Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually unchallengeable' tactical decisions left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000).  The case ultimately came down to a credibility contest between petitioner and Mattox, and Mattox's testimony, if accepted, provided sufficient evidence to show that petitioner, at a minimum, assaulted the victim with the intent to commit great bodily harm.  If convicted of assault with intent to commit great bodily harm, petitioner faced a maximum penalty (before any habitual offender enhancement) of 10 years' imprisonment, whereas he faced a maximum of only 4 years' imprisonment if convicted of felonious assault.  And simply having the jury instructed on felonious assault did not require counsel to simultaneously argue two inconsistent theories.  It was reasonable for counsel to decline to pursue an all-or-nothing strategy and to provide a basis for the jury to find the prosecution witnesses credible but not convict him of the greater offense.  *See Singleton v. Lockhart*, 871 F.2d 1395, 1400 (8th Cir. 1989); *Sigsby v. Hinkle*, No. 1:10cv1256, 2012 WL 346692, at *6 (E.D. Va. Feb. 1, 2012); *Ruggles v. Michigan Dep't of Corrections*, No. 2:08-CV-14706, 2011 WL 1812206, at *5 (E.D. Mich. May 12, 2011) (Zatkoff, J.).  And this strategy inured to petitioner's benefit.  The evidence that the perpetrator fired a number of shots at the victim from close range strongly supported a

finding that the perpetrator acted, at a minimum, with an intent to commit great bodily harm. And the jury, in finding petitioner guilty, credited the testimony of Mattox that petitioner was the perpetrator. Thus, counsel's strategy successfully reduced the penalty to which petitioner was subjected. In this circumstance, the Michigan Court of Appeals's rejection of petitioner's claim was not unreasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief with respect to this claim.

3.   *Evidentiary Hearing*

Petitioner contends that he is entitled to an evidentiary hearing to develop evidence in support of both his ineffective assistance of counsel claims. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) is a hearing is permitted under 28 U.S.C. § 2254(e)(2). Petitioner's request for an evidentiary hearing fails on both bases.

First, with respect to necessity, in deciding whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

20

It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citations and footnote omitted).

Here, an evidentiary hearing is not necessary to resolve petitioner's claims. As explained above, the record evidence demonstrates that Ezell was actively evading service, and petitioner has not offered even speculation as to what counsel could have done to secure Ezell's presence when the prosecution efforts to produce Ezell failed. Further, counsel's decision to pursue a lesser offense instruction was a reasonable strategic decision, a conclusion which requires no further evidentiary development.

Further, even assuming an evidentiary hearing were otherwise necessary under Rule 8, one is not permitted by § 2254(e)(2). Pursuant to 28 U.S.C. § 2254(e)(2), "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is not permissible because petitioner has "failed to develop the factual basis" of his ineffective assistance claim in the state courts. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[3] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id.* at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id.* at 432. Under Michigan law, to develop

---

[3]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name—"Michael Williams"—rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

the factual basis of his claims based on matters outside the record petitioner was required to file a motion for a new trial and evidentiary hearing in the trial court or a motion to remand for that purpose in the court of appeals. *See People v. Ginther*, 390 Mich. 436, 443-44, 212 N.W.2d 922, 925 (1973); *People v. Gray*, 125 Mich. App. 482, 486, 336 N.W.2d 491, 493 (1983). Here, petitioner did not file a motion for new trial or for an evidentiary hearing in the state courts to develop any ineffective assistance of counsel claims. Petitioner did file, contemporaneous with his motion for reconsideration, a motion to remand in the court of appeals after the appeal had been decided. However, the Michigan Court Rules require that a motion to remand for an evidentiary hearing be filed within the time for filing the appellant's brief on appeal. *See* MICH. CT. R. 7.211(C)(1)(a). Because petitioner did not seek a hearing in accordance with state law, he did not diligently attempt to develop the factual basis of his claim in state court and therefore he is not entitled to an evidentiary hearing here. *See Michael Williams*, 529 U.S. at 437 (§ 2254(e)(2) diligence requires "that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."); *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (petitioner's "failure to comply with [state] law reflects a lack of diligence.").

Moreover, an evidentiary hearing would not have the potential to advance petitioner's claim based on counsel's request for a felonious assault instruction because no facts developed at an evidentiary hearing would be relevant to whether the Michigan Court of Appeals reached an unreasonable determination with respect to petitioner's claim under § 2254(d)(1). In *Cullen v. Pinholster*, 131 S. Ct. 1388, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C. section 2254(d)(1)–whether the state court determination was contrary to or an unreasonable application of established federal

22

law–must be confined to the record that was before the state court.  *See Pinholster*, 131 S. Ct. at

1398.  The *Pinholster* Court specifically found that the district court should not have held an

evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition

survived review under § 2254(d)(1). *See id*.  Thus, even if this Court granted an evidentiary hearing,

because each of petitioner's claims was adjudicated on the merits by the Michigan Court of Appeals

the Court would have to "disregard [any] newly obtained evidence."  *Hanna v. Ishee*, 694 F.3d 596,

606 (6th Cir. 2012).  Thus, in light of *Pinholster*, an evidentiary hearing is not appropriate.  *See King

v. Booker*, No. 2:11-CV-13676, 2012 WL 3597655, at *1 (E.D. Mich. Aug. 21, 2012) (Roberts, J.).

E.    *Weight and Sufficiency of the Evidence (Claims II & III)*

Petitioner next contends that the prosecution presented insufficient evidence to prove his

guilt beyond a reasonable doubt, and that the verdict was against the weight of the evidence.  The

court should conclude that petitioner is not entitled to habeas relief on these claims.

1.    *Weight of the Evidence*

To the extent that petitioner argues that he is entitled to habeas relief because the jury's

verdict was against the great weight of the evidence, his claim is not cognizable.  It is well

established that habeas review is not available to correct errors of state law.  *See Estelle v. McGuire*,

502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas

court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d

882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's

application of its own laws.").  The federal constitution requires only that the evidence be sufficient

to sustain the conviction under the standard established in *Jackson v. Virginia, infra*.  Where the

evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of

23

the evidence presents a state law issue which is not cognizable on habeas review.  *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J.  2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence.").  In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).[4]

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2. *Sufficiency of the Evidence*

a. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is

---

[4]*Tibbs v. Florida*, 457 U.S. 31 (1982), upon which petitioner relies, actually supports this conclusion.  In *Tibbs*, the Court considered whether a state court's reversal of a conviction on the ground that the verdict was against the weight of the evidence precludes retrial under the Double Jeopardy Clause.  Although retrial is barred when an appellate court reverses a conviction on the ground that the evidence was constitutionally insufficient, the *Tibbs* Court found no such bar when a conviction is reversed on weight-of-the-evidence grounds.  In doing so, the Court explicitly noted the distinction between weight and sufficiency of the evidence, only the latter of which is governed by a federal constitutional standard. *See id.* at 44-45.  Thus, *Tibbs* provides no support for the claim that a weight of the evidence claim is cognizable on habeas review.  *See Taylor v. Booker*, No. 2:10-CV-13752, 2012 WL 3930324, at *3 (July 26, 2012) (Komives, M.J.), *magistrate judge's report adopted*, 2012 WL 3930315 (E.D. Mich. Sept. 10, 2012) (Roberts, J.); *Morris v. Hudson*, No. 5:06CV2446, 2007 WL 4276665, at *3 (N.D. Ohio Nov. 30, 2007).

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  "[I]t is the responsibility of the jury–not the court–to decide what conclusions should be drawn from the evidence admitted at trial."  *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 4 (2011) (per curiam).  The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'"  *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 319).  Likewise, a reviewing court "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United State v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *see also*, *United States v. Bailey*, 444 U.S. 394, 424-25 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326.  As the Court has explained, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality."  *Coleman*, 132 S. Ct. at 2065.  Under the amended version of § 2254(d)(1) a federal habeas court's review is "twice-deferential."  *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam).  A state court's decision that the evidence satisfied the deferential *Jackson* standard is itself "entitled to considerable deference under AEDPA."  *Coleman*, 132 S. Ct. at 2065; *see also*, *Cavazos*, 132 S. Ct. at 4.

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman*, 132 S. Ct. at 2064 (citation omitted) (quoting *Jackson*, 443 U.S. at 324 n.16).

### b. Analysis

Petitioner does not contest the sufficiency of the evidence with respect to any specific element of the charges against him; rather, he contends that the evidence was insufficient to establish his identity as the shooter. The Michigan Court of Appeals rejected this claim, reasoning:

> At trial, Mattox testified that defendant shot him at close range with a gun that defendant pulled from his waistband. Although Mattox's credibility was challenged during trial, "[t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v. Kanaan*, 278 Mich.App 594, 619; 751 NW2d 57 (2008). "All conflicts in the evidence must be resolved in favor of the prosecution." *Id*. Mattox's testimony, viewed in the light most favorable to the prosecution, alone was sufficient to prove that defendant committed a felonious assault and to establish the possessory elements of the weapons offenses. The testimony did not need to be corroborated. Further, defendant admitted that he had a prior felony conviction for distribution of a controlled substance, which made him ineligible to carry a firearm, MCL 28.422(3)(e), and a certified copy of that conviction was entered into evidence, thereby establishing the remaining elements of the felon-in-possession charge. Accordingly, the evidence was sufficient to support defendant's convictions.

*Greer*, 2010 WL 2332417, at *3. Because this determination was reasonable, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

26

There is no doubt that Mattox's testimony alone was sufficient to prove petitioner's guilt beyond a reasonable doubt.[5]  Mattox testified that petitioner shot at him multiple times at close range, establishing all the elements of the felonious assault and weapons possession offenses.  As the court of appeals correctly observed in rejecting petitioner's claim, it is well established that the testimony of a victim alone, if it establishes all the elements of the offense, is sufficient to support a guilty verdict.  *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict.").  Petitioner contends that Mattox's testimony was not credible because of inconsistencies in Mattox's prior statements and between his trial testimony and the testimony of other witnesses.  As noted above, however, in reviewing the sufficiency of the evidence this Court does not make credibility determinations, nor does it reweigh the evidence.  A reviewing court may reverse a jury's credibility determinations only where the testimony is incredible as a matter of law, "such as where it was physically impossible for the witness to observe that which he claims occurred, or impossible under the laws of nature for the occurrence to have taken place at all."  *United States v. Radziszewski*, 474 F.3d 480, 485 (7th Cir. 2007) (internal quotation omitted); *accord United States v. Smith*, 606 F.3d 1270, 1281 (10th Cir. 2010); *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009); *United States v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993).  Here, Mattox's testimony was not impossible based on his ability

---

[5]In reaching this conclusion, I note that petitioner is wrong to characterize Mattox's testimony as uncorroborated.  In particular, the victim's girlfriend testified that she recovered a gun at petitioner's direction, showing petitioner's consciousness of guilt, and forensic evidence established that the lands and grooves produced by the gun, as well as the gun's caliber, were consistent with the bullets recovered by the police.  Petitioner's girlfriend also testified that he asked her what she would do if he went to prison for killing someone.  Finally, Shelby corroborated much of the victim's testimony.

to observe or the laws of nature.  The fact that the witnesses' testimony was inconsistent with prior accounts or with the testimony of other witnesses does not render the testimony incredible on its face.  *See United States v. Patterson*, 23 F.3d 1239, 1244 n.5 (7th Cir. 1994).  Nor is the evidence insufficient because petitioner presented alibi evidence and some evidence was presented that another person committed the crime.  That the evidence might equally support other, innocent, inferences is irrelevant; the prosecution's evidence need not rule out every hypothesis other than petitioner's guilt to be sufficient.  *See Jackson*, 443 U.S. at 326.[6]

In short, as noted above the *Jackson* standard does not permit "fine-grained factual parsing" of the evidence by a reviewing court, *Coleman*, 132 S. Ct. at 2064, nor does it permit this Court to reweigh the conflicts in the evidence or assess the credibility of the witnesses.  The jury was free to draw any reasonable inferences from the evidence, and to resolve the conflicts in the evidence in favor of the prosecution.  In light of the testimony of Mattox, the jury's verdict does not "fall below the threshold of bare rationality."  *Id.* at 2065.  It follows that the Michigan Court of Appeals's

---

[6]Petitioner also contends that there was nothing presented to connect the gun in evidence either to him or to the shooting.  This argument is without merit.  The testimony of petitioner's girlfriend and brother connected the gun to petitioner, and the ballistics testimony tied the gun to the shooting.  Neither connection may have been conclusively established, but that was not required.  In any event, the lack of an evidentiary nexus between the gun introduced into evidence and either petitioner or the crime does not call into question the sufficiency of the evidence.  Mattox testified that petitioner was armed with a gun, and that evidence by itself was sufficient.  The lack of a nexus between the gun introduced into evidence and either petitioner or the crime may have rendered the gun inadmissible under the Michigan Rules of Evidence, but petitioner brings no such evidentiary claim.  And even if the gun was improperly admitted, such improper admission of evidence has no bearing on the sufficiency of the evidence.  While the erroneous admission of evidence may, or may not, entitle a habeas petitioner or appellant to relief on that basis, in assessing the sufficiency of the evidence the Court is required to weigh all of the evidence, even that evidence which was improperly admitted.  *See United States v. Carneglia*, 47 Fed. Appx. 27, 34-35 (2d Cir. 2002); *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988) (in assessing whether the evidence was sufficient for purposes of determining whether retrial is permitted under the Double Jeopardy Clause, court looks at all of the evidence admitted, even that which was improperly admitted).

28

rejection of this claim was a reasonable application of *Jackson*.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Perjured Testimony (Claim IV)*

Finally, petitioner contends that he was denied a fair trial because the prosecution presented perjured testimony.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *accord Napue v. Illinois*, 360 U.S. 264, 271 (1959).  This is true whether the false testimony goes to the defendant's guilt or to a witness's credibility, *see Napue*, 360 U.S. at 270, and it matters not whether the prosecution directly elicits the false testimony or merely allows false testimony to go uncorrected, *see id.* at 269.  To succeed on this claim petitioner must show that: (1) the prosecutor presented evidence which was false; (2) the prosecutor knew of the falsity; and (3) the evidence was material.  *See Coe v. Bell*, 161 F.3d 320, 343

With respect to the first element, it is well established that petitioner bears the burden of proving that the testimony amounted to perjury.  As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured.  Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every

testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). (6th Cir. 1999). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). In other words, petitioner must show that the testimony was "indisputably false." *Byrd v. Collins*, 209 F.3d 486, 817-18 (6th Cir. 2000).

With respect to the second element, as the Sixth Circuit has explained in order for a witness's perjury at trial to constitute a basis for habeas relief, the petitioner must show "prosecutorial involvement in the perjury." *Burks v. Egeler*, 512 F.2d 221, 229 (6th Cir. 1975). The Sixth Circuit has repeatedly reaffirmed the requirement that a petitioner show prosecutorial involvement in or knowledge of the perjury. *See, e.g.*, *Rosencrantz v. Lafler*, 568 F.3d 583-84 (6th Cir. 2009); *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000); *King v. Trippett*, 192 F.3d 517, 522 (6th Cir. 1999); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Ford v. United States*, No. 94-3469, 1994 WL 521119, at *2 (6th Cir. Sept. 23, 1994); *Akbar v. Jago*, No. 84-3540, 1985 WL 13195, at *1 (6th Cir. Apr. 10, 1985); *Roddy v. Black*, 516 F.2d 1380, 1383 (6th Cir. 1975). And the Supreme Court has repeatedly characterized the Due Process Clause only as barring conviction on the basis of perjury

30

known by the prosecution to be such.  *See, e.g.*, *Napue v. Illinois*, 360 U.S. 264, 269 (1959)

(emphasis added) ("[I]t is established that a conviction obtained through use of false evidence,

*known to be such by representatives of the State*, must fall under the Fourteenth Amendment.");

*United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added) (due process is violated by the

"*knowing* use of perjured testimony."); *see id.* at 103-04 & nn. 8-9 (discussing cases).  At a

minimum, "[t]he Supreme Court has never held that due process is offended by a conviction resting

on perjured testimony where the prosecution did not know of the testimony's falsity at trial."

*LaMothe v. Cademartori*, No. C 04-3395, 2005 WL 3095884, at *5 (N.D. Cal. Nov. 11, 2005)

(citing *Jacobs v. Scott*, 513 U.S. 1067 (1995) (Stevens, J., dissenting from denial of certiorari)

(noting that the Supreme Court has yet to consider the question of whether due process is violated

by a conviction based on perjured testimony regardless of the prosecutor's knowledge)); *cf. Briscoe

v. LaHue*, 460 U.S. 325, 326 n. 1 (1983) ("The Court has held that the prosecutor's knowing use of

perjured testimony violates due process, but has not held that the false testimony of a police officer

in itself violates constitutional rights.").

      2.    *Analysis*

      Petitioner contends that Shelby's testimony that he witnessed the shooting and saw petitioner

was false, and that the prosecutor knew or should have known that Shelby's testimony was false.

The Michigan Court of Appeals rejected this claim, reasoning:

> [T]he record does not support defendant's claim that Shelby's testimony was false,
> or that the prosecutor knew it to be false.  As previously discussed, Shelby's
> testimony was not inconsistent with the physical evidence.  Further, the mere
> existence of some inconsistencies within his testimony or with the testimony of other
> witnesses does not equate to perjury.  The record shows that defendant was fully
> aware of the alleged inconsistencies and contradictions in Shelby's testimony and
> had an opportunity to explore these matters before the jury at trial.  But the mere
> existence of these inconsistencies does not establish that the prosecutor presented

testimony that was known to be false.

*Greer*, 2010 WL 2332417, at *5.  This determination was reasonable.

Petitioner's argument that Shelby committed perjury is premised primarily on his contention that Shelby's testimony regarding the locations of petitioner and Maddox at the time the shots were fired is inconsistent with the physical evidence.  As the court of appeals explained, however, there was not necessarily any inconsistency between Shelby's testimony and the ballistics evidence:

> Based on the location of recovered bullet fragments, Detective Orrison surmised that the shooter stood either in the middle of the street or possibly on the west side and shot in an east to southeasterly direction. This testimony was not wholly inconsistent with Shelby's generalization that the shooting occurred across the street from where he stood. Also, defendant's argument assumes that, in Shelby's account, the shooter remained standing in the same direction from which he came as he fired his gun. However, Shelby did not indicate what direction defendant or Mattox were facing when the first shot was fired. Mattox testified that he turned to run when he saw defendant begin to pull a gun from his waistband. Based on the gunshot residue on Mattox's wound and Mattox's testimony that he was shot as he turned to flee, it was reasonable to infer that the first shot Shelby heard was the one that injured Mattox. The bullet that struck Mattox was never found, so Shelby's testimony did not conflict with any physical evidence. Further, Shelby did not testify regarding defendant's movements after the first shot was fired. Shelby fled after the first shot and only heard the subsequent shots.

*Id*. at *4.  Petitioner has offered nothing to show that this was an unreasonable view of the evidence, and he presents no direct evidence that Shelby committed perjury or that the prosecution knew about the alleged perjury.  Further, inconsistencies between Shelby's testimony and his prior statements, or between his testimony and the testimony of other witnesses, does not by itself establish that Shelby committed perjury or that the prosecution knew of the alleged perjury.  Because petitioner has failed to establish that Shelby's testimony was "indisputably false," *Byrd*, 209 F.3d at 817-18, or that the prosecutor knew of any falsity, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable.  Accordingly, the Court should conclude that petitioner is not entitled to

habeas relief on this claim.

G.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. With respect to petitioner's ineffective assistance of counsel claims, the record establishes that Ezell could not be located for trial and that counsel's decision to request an instruction on felonious assault was a reasonable strategic decision. Accordingly, the resolution of petitioner's ineffective assistance of counsel claims is not reasonably debatable. Because a claim that the verdict is against the weight of the evidence presents a state law claim that is not cognizable on habeas review, the resolution of this claim is not reasonably debatable. It is well established that the testimony of the victim alone can support a jury's verdict and that a reviewing court does not reweigh the evidence or assess the

credibility of the witnesses, and Mattox's testimony provides sufficient evidence to establish each element of the offenses for which petitioner was convicted. Thus, the resolution of petitioner's sufficiency of the evidence claim is not reasonably debatable. Finally, because petitioner has failed to point to any evidence that Shelby committed perjury or that the prosecutor knew of the alleged perjury, the resolution of petitioner's false evidence claim is not reasonably debatable. Accordingly, the Court should deny petitioner a certificate of appealability.

H.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any

objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/14/12


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on December 14, 2012.

s/Eddrey Butts
Case Manager